## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SPRINT NEXTEL CORPORATION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **EXECUTIVE RISK INDEMNITY INC.;** ) | **CIVIL ACTION** |
| **RLI INSURANCE COMPANY; ZURICH**) | |
| **AMERICAN INSURANCE COMPANY** ) | **Case No. 08-2094-CM** |
| **ARCH INSURANCE COMPANY;** ) | |
| **LUMBERMENS MUTUAL CASUALTY** ) | |
| **COMPANY; OLD REPUBLIC** ) | |
| **INSURANCE COMPANY; ST. PAUL** ) | |
| **MERCURY INSURANCE COMPANY;** ) | |
| **THE TRAVELERS INDEMNITY** ) | |
| **COMPANY; TWIN CITIES FIRE** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| **Defendants,** ) | |
| _____) | |

### MEMORANDUM AND ORDER

Plaintiff Sprint Nextel Corporation ("Sprint") brings this action against defendants The Travelers Indemnity Company ("Travelers"), St. Paul Mercury Insurance Company ("St. Paul"), and a number of other insurance companies, seeking a declaratory judgment of what the rights and obligations of each of the defendant insurance companies are. The case is before the court on defendants Travelers' and St. Paul's motions to dismiss (Docs. 96 and 99). In their motions, defendants allege that the court lacks subject matter jurisdiction. For the following reasons, the court denies defendants' motions.

### I.   Factual Background

Between 1999 and 2003, Sprint purchased twenty different directors and officers liability insurance policies ("D&O policies") from nine different insurance carriers ("the insurance carriers").

Sprint purchased the policies for three different policy periods: 1999-2000, 2001-02, and 2002-03. In 2003, Sprint, several of its directors and officers, and others were named as defendants in seven securities class action lawsuits ("2003 Securities Litigation"). The 2003 Securities Litigation is the type of litigation typically covered by D&O policies. The insurance carriers disagreed about which policy period or periods provided coverage for the 2003 Securities Litigation, and all nine reserved the right, or failed to affirm to Sprint, that they would provide coverage.

On February 13, 2008, Sprint, having incurred over $2 million in expenses related to the still-pending 2003 Securities Litigation, filed a petition in Kansas state court for declaratory judgment against the nine insurance carriers, seeking "a declaration of the extent to which the 2003 Securities Litigation is to be covered by the 1999-2000 Policies, the 2000-01 Policies, and/or the 2002-03 Policies." The case was subsequently removed to federal court, and on June 19, 2009, two of the insurance carriers, St. Paul and Travelers, filed identical motions to dismiss, alleging that no justiciable controversy exists and that Sprint does not present a "ripe" issue.

**II.      Standard of Review**

The existence of subject matter jurisdiction is a threshold issue. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). Because defendants raise facial challenges to subject matter jurisdiction, the court accepts Sprint's well-pleaded allegations as true, and examines the sufficiency of those allegations as to subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

**III.     Discussion**

For a court to exercise jurisdiction under Article III of the U.S. Constitution, there must be a "case" or "controversy." U.S. Const. art. III; *also see* 10B Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 2757 (3d ed. 2009).  This requirement is also known as "justiciability."  Before a case becomes justiciable, certain prerequisites must be met.  The parties must have standing, the issue must not have become "moot," the issue must not involve a "political question," and the issue must be "ripe" for review.  1 *Federal Procedure, Lawyers Edition* § 1:14 (2008).  In other words, "ripeness" is a sub-issue of the larger issue of whether a case is "justiciable."  A case could be ripe without being justiciable (i.e., if the issue was moot or a plaintiff lacked standing), but a case could not be justiciable without being ripe.

Defendants submit two reasons as to why the current litigation should be dismissed.  First, they claim that Sprint's petition does not establish a controversy with either of them.  Second, they allege that Sprint does not present a ripe issue for adjudication.  As noted above, ripeness is merely a subset of the larger case or controversy requirement of Article III.  Additionally, since defendants do not seem to be using the case or controversy/justiciability requirement to represent anything more than ripeness, and in fact seem to use the two almost interchangeably, there is no need to address the two separately.

Sprint petitioned the court for a declaratory judgment.  Therefore, the starting point in addressing whether the court has jurisdiction is the language of the Declaratory Judgment Act:

> *In a case of actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may declare* the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added).  By its wording, "the Act embraces both constitutional and prudential considerations."  *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989).  The word "actual" provides emphasis rather than definition; the Act merely provides a procedure by which federal courts can declare the legal rights and obligations of parties who have a justiciable

controversy.  *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

Defendants have only addressed constitutional concerns.  Nonetheless, because it is within the court's discretion to decide whether to exercise the jurisdiction granted to it under 28 U.S.C. § 2201, the court will address both constitutional and prudential concerns.

### A.     *Constitutional Concerns*

The key inquiry for courts deciding whether the requirements of Article III have been met is to delineate whether a pleading presents a sufficient "case or controversy," or whether it merely presents a dispute that is "hypothetical, abstract, or academic in character."  *Kunkel*, 866 F.2d at 1273.  The Supreme Court has recognized that the distinction between an abstract question and a "controversy" is blurred, and that to create a "precise test" for determining in every instance whether a controversy exists is impossible.  *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  Instead, the test is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Kunkel*, 866 F.2d at 1274 (citing *Md. Cas. Co.*, 312 U.S. at 273).

Applying the above test in *Kunkel*, the Tenth Circuit found a justiciable controversy between a policyholder and its insurer, even though the underlying action for which coverage was sought had yet to be resolved and there was a question over whether a policy exclusion from coverage was applicable.  866 F.2d at 1275.  *Kunkel* involved a policyholder accountant who was named in securities fraud litigation brought by separate investors.  The policyholder filed a declaratory judgment action against its insurer regarding the amount of coverage available under a professional liability insurance policy.  The insurer argued that the case was not yet justiciable, because the accountant had not yet been held liable to the class members, and the policy's terms had not yet been

interpreted to cover his liability. *Id.* at 1274. The Tenth Circuit disagreed, *id.*, and held that the insurer and the policyholder were "embattled in a hostile assertion of rights within constitutional boundaries" because "[the policyholder's petition] relates to [the insurer's] rights and obligations arising from its contract of insurance," *id*.

Similar to Kunkel's complaint, Sprint's removed state court petition also calls into question its insurer's rights and obligations. Sprint alleges that "[a]ll Defendants have reserved the right to deny coverage . . . , disclaimed their obligation to provide coverage . . . , and/or failed to affirm they will provide coverage." (*See* Pet. ¶ 48.)

Defendants' primary argument is that Sprint's pleading does not contain a "definite and real" dispute—let alone any dispute at all. Essentially, defendants argue that since neither Sprint nor defendants know exactly what their position is relative to the insurance policies, Sprint cannot possibly dispute defendants' position.

Defendants rely on *Kunkel* to support their claim that *parties* need to take adverse positions with respect to the insurer's obligations for an actual controversy to exist. *See* 866 F.2d at 1274 (stating that the test for whether a justiciable controversy exists is whether " . . . a substantial controversy [exists], between *parties* having adverse legal interests . . . ") (emphasis added). But in *Kunkel*, only one insurance carrier was a named defendant, so in order for both parties to have an adverse position, Kunkel had to take a direct adverse position to the insurance company. Here, by contrast, there are nine named defendants, and Sprint *has* taken a coverage position with respect to all nine defendants. Namely, its position is that it is covered by at least one of the policies issued by the nine, and this position *is contrary* to the nine defendants' position that they can disavow coverage. This disagreement between the two parties creates a justiciable controversy under Article III.

**B.    *Prudential Concerns***

Even though Sprint's petition does present a justiciable controversy, a court should nonetheless only exercise its jurisdiction to determine the parties' rights and obligations "when the judgment will [1] clarify or settle the legal relations in issue and [2] terminate or afford relief from the uncertainty giving rise to the proceeding." *Nat'l Union Fire Ins. Co. of Pittsburg, P.A. v. Midland Bancor, Inc.*, 854 F. Supp. 782, 789 (D. Kan. 1994) (quoting *Kunkel*, 866 F.2d at 1275)).

In addressing whether these two prongs are met, the Tenth Circuit has articulated a five factor analysis that a trial court may consider. *See St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995). The five factors cited by the Tenth Circuit are:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* (citing *State Farm Ins. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

In the present case, clarifying the legal relations between Sprint and its insurance carriers would settle the controversy and would clarify the legal relations, as the court's interpretation would be binding on both parties. Further, there are no "procedural fencing" or comity issues, as this action has been removed to federal court, and there is no state involvement whatsoever. Lastly, the only alternative remedy would be to take a "wait and see" approach, advocated by defendants, but it is hard to see why this approach would be advantageous. Sprint has already expended over $2 million in expenses related to the 2003 Securities Litigation, and the litigation is ongoing. This is a substantial controversy, and no other remedy would more efficiently and effectively resolve this dispute between the parties.

Both prongs of the *Kunkel* test weigh in favor of this court exercising jurisdiction.  First, as in *Kunkel*, by declaring Sprint's and the insurance carriers' rights and obligations, the court will "beyond doubt" settle the legal relations in issue.  Second, by settling the legal relations, the uncertainty giving rise to the proceeding will no longer exist.

**IT IS THEREFORE ORDERED** that defendants' Motions to Dismiss (Docs. 96 and 99) are denied.

Dated this 1st day of September 2009, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**